UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER GRAHAM,

              Plaintiff,

v.                                                       **DECISION AND ORDER**
                                                                 17-CV-905S

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

        1.        Plaintiff Jennifer Graham brings this action pursuant to the Social Security Act ("the Act"), challenging the determination of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

        2.        Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket Nos. 6, 10), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED.

        3.        On September 27, 2013, Plaintiff protectively filed an application for DIB and SSI. (R.[1] at 175-82). Plaintiff alleged that she has been disabled since January 6, 2012, due to bipolar disorder, depression, anxiety, post-traumatic stress disorder ("PTSD"), insomnia, and obesity. (R. at 197). On December 23, 2013, the Commissioner denied Plaintiff's applications. (R. at 112-27). Plaintiff thereafter requested a hearing

---

[1] Citations to the underlying administrative record are designated as "R."

before an ALJ. On February 3, 2016, ALJ Susan Smith held a hearing at which Plaintiff, assisted by counsel, and vocational expert ("VE"), Jay Steinbrenner appeared and testified. (R. at 34-60). At the time of the hearing, Plaintiff was 44 years old, with a master's degree in library science, and past work experience as an assistant librarian, graduate assistant, and county services case manager. (R. at 39, 199). The ALJ considered the case *de novo* and, on April 7, 2016, issued a written decision denying Plaintiff's application for benefits. (R. at 19-30). The Appeals Council denied Plaintiff's request for review on July 10, 2017. (R. at 1-6). Plaintiff filed the current action on September 12, 2017, challenging the Commissioner's final decision.[2] (Docket No. 1).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's April 7, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

3

> has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 6, 2012, the alleged onset date. (R. at 24). At step two, The ALJ found that Plaintiff had the following severe impairments: panic disorder; bipolar disorder; and PTSD. (R. at 24). At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25).

10. Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels defined in 20 C.F.R. § 404.1567(b), but with several limitations[3]. (R. at 26-28).

11. At step four, the ALJ found that Plaintiff could not perform her past relevant work. (R. at 28-29). At step five, the ALJ relied on the VE's testimony and found that given Plaintiff's age, education, work experience, and RFC Plaintiff could perform jobs that exist in significant number in the national economy. (R. at 29-30). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—January 6, 2012, through April 7, 2016. (R. at 30).

12. Plaintiff argues that the ALJ's determination that Plaintiff was not disabled within the meaning of the Act is not supported by substantial evidence because the ALJ inappropriately "cherry pick[ed]" evidence that supported her evaluation of Plaintiff's RFC, and "ignored […] without explanation" other evidence that Plaintiff had limitations in her ability to (1) learn and perform simple tasks; (2) maintain attention and concentration for simple tasks; and (3) maintain a simple regular schedule. (Docket No. 6 at 10-17). Plaintiff further contends that if the ALJ had correctly incorporated the aforementioned additional non-exertional limitations into the RFC assessment, Plaintiff's disability claims would be supported. (Docket No. 6 at 17-18). Each argument is discussed in turn.

---

[3] The ALJ found that Plaintiff retained the RFC for a full range of work at all exertional levels, except that such work must be limited to simple, routine, repetitive tasks that involve occasional public contact; Plaintiff cannot work in teams or tandem; Plaintiff can have little change in the work structure or routine; and Plaintiff is limited to low stress work defined as no high production quotas or fast paced assembly lines. (R. at 26).

5

13. Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to fully incorporate the findings of a consulting psychiatrist in the assessment. An ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The claimant has the burden to demonstrate functional limitations that preclude any substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); SSR 96-4p, 1996 WL 374187; see also Bowen, 482 U.S. at 146 n.5.

14. Here, the ALJ properly weighed the "totality of the [Plaintiff's] record" including the medical opinion of Dr. Christine Ransom, who conducted a consultative psychiatric evaluation of Plaintiff on November 8, 2013, as well as the Plaintiff's own testimony in determining Plaintiff's RFC. (R. at 26-28).

15. Dr. Ransom's notes indicate that Plaintiff, who had driven herself to the appointment, "was cooperative and socially appropriate;" presented with adequate hygiene and grooming; and "denied generalized anxiety, thought disorder, cognitive symptoms and deficits," and that Plaintiff complained of depression; mood swings; crying spells; panic attacks; nightmares and difficulty sleeping; racing thoughts and difficulty concentrating; limited social interaction; and a lack of motivation. (R. at 309-10).

16. Plaintiff's mental status examination indicated that Plaintiff's affect was "moderately dysphoric and intense," her motor behavior was lethargic, and speech was slow, but that her expressive and receptive language skills were adequate and posed no communicative difficulties. (R. at 310-11). The psychiatrist further observed that Plaintiff's thought processes were coherent and goal-directed; she was oriented to

6

person, place and time; Plaintiff's attention and concentration were intact; immediate, recent, and remote memory were all intact; intellectual functioning appeared to be average; and insight and judgment were good. (R. at 311).

17. Dr. Ransom diagnosed Plaintiff with moderate to marked PTSD and bipolar disorder, as well as mild panic disorder, and opined that Plaintiff:

> will have mild to moderate difficulty following and understanding simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. She will have moderate to marked difficulty performing complex tasks, relate adequately with others, and appropriately deal with stress […]

(R. at 312).

18. In terms of longitudinal history, it was noted that, prior to the alleged onset date of January 6, 2012, Plaintiff had been partially hospitalized for one month in the summer of 2010 to receive treatment for bipolar disorder and depression, and that since 2010, she had been treated at an Erie County Medical Center outpatient clinic for PTSD, bipolar disorder, and anxiety. (R. at 309). Dr. Ransom recommended continued treatment and counseling, and categorized Plaintiff's prognosis as "fair." (R. at 312). However, Plaintiff testified that she voluntarily left counseling treatment in August of 2015 (R. at 44), because "I was kind of stable, and I didn't want to go" (R. at 53), and that she had discontinued all medications (R. at 52).

19. Plaintiff claims that the ALJ ignored the portions of Dr. Ransom's opinion (cited above) that identified non-exertional functional limitations, but the ALJ not only discussed all portions of the report, finding the overall examination to be "consistent with the medical record as a whole and [Plaintiff's] lack of consistent psychiatric treatment,"

7

but also properly afforded the psychiatrist's opinion great weight. (R. at 27-28). Informed by Dr. Ransom's opinion, the ALJ found that Plaintiff has "serious non-exertional functional limitations," but that these are "not sufficient to erode the occupational base of unskilled work at all exertional levels." (R. at 28).

20. In support of this assessment, the ALJ noted that Plaintiff is only mildly restricted in activities of daily living, as indicated by her ability to maintain adequate personal hygiene and dress (R. at 205-6, 311), prepare simple meals (R. at 206), care for her pet (R. at 205), and drive independently (R. at 309). The ALJ also noted that despite moderate difficulties in social functioning, Plaintiff goes out to restaurants and the library, takes day trips with her roommate (R. at 207), and utilizes social media id. (R. at 25-28). The record also reflects that Plaintiff frequently attends family gatherings (R. at 207), goes to the gym (R. at 208), and takes public transportation (R. at 40).

21. The ALJ also discussed notes from Kaleida Health mental health clinic visits that discuss Plaintiff's efforts to find a civil service job, and note that Plaintiff "is making positive, concrete steps toward re-entering [the] work force" (R. at 285), including "ordering transcripts and librarian license," despite "feel[ing] somewhat ambivalent about taking action steps/focusing on job attainment with disability appl pending." (R. at 282). At an October 3, 2013 clinic visit, Plaintiff exhibited "normal mood, affect congruent, pleasant and cooperative," and indicated that despite reported difficulty concentrating, she had been "able to learn new elliptical machine at [her] gym," and continued to make progress with her civil service job search. (R. at 278-279). The counselor noted that:

> [Plaintiff] plans to take civil service test this weekend. [Plaintiff] had actually found out, through her own diligence that she was disqualified from taking the test on all three tests she applied for, but then she persisted in appealign [sic] these

and was successful with overturning the decision and was then deemed "qualified" to partake in the test this weekend.

(R. at 279).

22. Although Plaintiff testified that her civil service test results were not favorable (R. at 53-54), and that she has been unsuccessful with applications to temp agencies, which "said that [Plaintiff doesn't] have the skill set and [Plaintiff] didn't have good interviews" (R. at 41-42), Plaintiff also testified to her ability to use a computer to do paid research (R. at 42), and to care for others' children and pets (R. at 43).

23. In limiting Plaintiff, a 44-year old woman with a master's degree and past skilled work experience[4], to performing only unskilled, low stress work, that does not involve working in teams or tandem, and that can have little change in work structure or routine (R. at 26), we find that the ALJ adequately incorporated Dr. Ransom's opinion that Plaintiff would have mild to moderate limitations in learning and performing simple tasks and maintaining a simple schedule.

24. The record is replete with indications of Plaintiff's intelligence[5] and ability to perform tasks that require persistence, concentration, and attention,[6] provides substantial evidence to support the ALJ's findings. Therefore, remand is not warranted. See Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982), remand was not warranted where "we were able to look to other portions of the ALJ's decision and to clearly reliable evidence in finding that his determination was supported by substantial evidence." See also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir 1983) ("When, as here, the evidence of

---

[4] The VE testified that Plaintiff's prior work experience as a county caseworker (DOT No. 195.107-010) and as an assistant librarian (DOT No. 249.367-046) is classified as "skilled" work. (R. at 56).
[5] Kaleida Health counselor noted Plaintiff's strengths and skills as: "smart, tenacious, survivor skills" (R. at 273)
[6] See discussion of Plaintiff's successful appeal of civil service exam disqualification. (R. at 279).

9

record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient.")

25. Plaintiff's remaining argument, that "if the ALJ had incorporated additional limitations into the RFC assessment, VE testimony supports a finding of disability" (Docket No. 6 at 17) misstates the scope of review of this Court, which is limited to determining whether the ALJ's decision is supported by substantial evidence. Because the ALJ's conclusions are supported by substantial evidence, this argument is moot.

26. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:    December 6, 2018
              Buffalo, New York

                                          /s/William M. Skretny
                                          WLLIAM M. SKRETNY
                                        United States District Court Judge